UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                     CASE NO: 24-CR-20295-JB

           Plaintiff,

vs.

JORGE LUIS LOPEZ-ASTUDILLO,

           Defendant.

_____/

## DEFENDANT, JORGE LUIS LOPEZ-ASTUDILLO'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT, REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE, AND SENTENCING MEMORANDUM

The Defendant, **JORGE LUIS LOPEZ-ASTUDILLO** ("Mr. Lopez"), by and through his undersigned counsel, and pursuant to *U.S.S.G. §6A1.2-3*, *Rule 32 (d), (e)(2)* and *(f)*, *Fed. R. Crim. P.,* and *18 U.S.C. § 3553(a),* respectfully files his objections to the Presentence Investigation Report (hereinafter "PSR"), request for downward departure or variance, and Sentencing Memorandum. In support thereof, Mr. Lopez states as follows:

### I.    INTRODUCTION

Jorge Luis Lopez-Astudillo is a Venezuelan fisherman who was interdicted by the United States Coast Guard (USCG) on June 26, 2024. [PSR at ¶¶ 3, 45]. He arrived in the Southern District of Florida on July 5, 2024, and turned over to the Drug Enforcement Administration. [PSR at ¶8]. On July 12, 2024, he was charged with conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70503(a)(1) (Count 1) and possession with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46 USC §70503(a)(1)



1

and 18 USC §2. (Count 2). [DE 1].  Mr. Lopez pled guilty to the conspiracy charge, Count 1.  [PSR at ¶1].

Mr. Lopez became involved when an individual he did not know approached him about assisting with navigating a vessel to Colombia and the promise of $1,000.00. [PSR at ¶9].  He was one of eight (8) individuals who boarded a Go-Fast Vessel (GFV) destined for an undisclosed location. [PSR at ¶¶ 6, 9].   Mr. Lopez had no education—he has never been to school and cannot read or write. He is a fisherman in the poverty-stricken town of  Puerto Cabello, Venezuela who makes the equivalent of 13 U.S. cents per month. [PSR at ¶¶ 33, 44].  Mr. Lopez did not know the man who approached him, and he had no control or interest in the contraband—Mr. Lopez was simply a courier.

## II.    MR. LOPEZ'S OBJECTIONS TO THE PSR

***Page 2—Arrest Date:*** Mr. Lopez and his codefendants were interdicted by the USCG on June 26, 2024,  *see DE 1, DE 147,* and has thus been in United States custody since June 26, 2024. *See 14 U.S. Code § 522(a)* (granting the Coast Guard authority to board any vessel subject to United States jurisdiction to arrest any individual violating the laws of the United States), even though he was not "arrested by the Drug Enforcement Administration" until July 5, 2025. [PSR ¶ 8]. This Court previously heard testimony, in the case of *United States v. Andres Pereyra,* 23-cr-20426-JB, that the Coast Guard intentionally avoids sailing into U.S. territorial waters so as not to trigger the due process requirement of having a defendant brought before a magistrate within seventy-two (72) hours of arrest. *See Pereyra,* 23-cr-20426-JB, DE 38, pp 4-8.  Therefore, the Court should credit Mr. Lopez's time in custody from the date he was seized by the USCG, i.e., June 26, 2024, [PSR ¶ 3 at p.



## A. OBJECTIONS TO GUIDELINES CALCULATIONS

Mr. Lopez objects to paragraphs 12, 14, 15, 18, 20, and 24.

### _Paragraph12--Role Assessment_

#### _Under the New Mitigating Role Rules Applicable to Drug Trafficking Cases, Mr. Lopez is Entitled to a Four-Level Mitigating Role Adjustment_

The PSR assesses a two (2)-level minor role adjustment pursuant to §3B1.2(b). Based on the new special instructions in section 2D1.1(e)(2), and section 3B1.2(a), Mr. Lopez should receive a four (4)-level mitigating role adjustment as a minimal participant. In _United States v. Maciel,_ 789 F. Supp. 3d 934 (S.D. CA 2025), the court found that although the defendant was transporting a large quantity of drugs, defendant, a courier who was transporting fentanyl and methamphetamine, was entitled to a four (4)-level adjustment because he acted only and purely as a drug courier. _Id. at 940._[1] The court noted:

> **_The purpose behind the amendment is for courts to more frequently apply adjustments under § 3B1.2(a) (minimal role) and grant defendants who are only couriers a 4-level reduction._** In its written Reason for Amendment, the Commission states that it was concerned that a prior amendment to § 3B1.2—which was also intended "to increase [§ 3B1.2's] usage"—"did not result in a sustained increase in application of the mitigating role adjustment in § 2D1.1 cases." Instead, the Commission's data showed that "when § 3B1.2 is applied in § 2D1.1 cases, the vast majority of these cases receive only a 2-level reduction; 3- and 4-level reductions are rarely applied." (Id. at 8 (emphasis added).) The Commission therefore adopted the upcoming 2025 amendment in order to "expand[ ] the circumstances in which an adjustment under § 3B1.2 is applied in § 2D1.1 cases." (Id. at 8 (emphasis added).) Indeed, the very text of the special instruction in § 2D1.1(e)(2)(B) provides that even if the defendant is not entitled to a mitigating role adjustment under § 3B1.2, they are still entitled to a minimal role adjustment if their "primary function" is one of those listed in § 2D1.1(e)(2)(B)(i), which includes a courier.

---

[1] The Court's analysis and decision was rendered in June 2025, **_before_**, the new section 2D1.1(e) Guideline took effect on November 1, 2025.



QUINTERO BROCHE & FONSECA-NADER P.A.
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-9363 • Fax: (305) 446-4593

*Id. at 939-40.* (emphasis added) (citations omitted) (citing U.S. Sentencing Commission, *Official Text of Amendments to the Sentencing Guidelines* (April 30, 2025), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202505_Amendments.pdf, at 8).

Under § 2D1.1(e)(2)(B)(i), Mr. Lopez is entitled to a four (4)-point role reduction. When combined with the amended mitigating role base offense level caps, his total adjusted offense level is 19.

As of November 1, 2025, the mitigating-role adjustment operates differently as applied to individuals convicted of drug-trafficking offenses who served only a low-level trafficking function. Specifically, amended § 2D1.1 has a new "special instruction" (at (e)(2)) for applying § 3B1.2 role reductions in drug trafficking cases. Under section 2D1.1(e)(2), role reductions can now be triggered ***solely by a person's primary function in the global drug-trafficking market*** and are not available only to those "substantially less culpable than the average participant" in the same criminal enterprise, as was previously the case. *Accord U.S. Sent'g Guidelines Manual* § 2D1.1(e)(2)(B) (U.S. Sent'g Comm'n 2025) (providing general availability of § 3B1.2 reductions based on a person occupying a low-level drug trafficking function) [hereinafter USSG] with *id.* § 2D1.1(e)(2) (providing that role reductions are available in single-defendant criminal offenses and regardless of individual's culpability relative to others in the same criminal conduct).

Under § 2D1.1(e)(2)(B)(i), Mr. Lopez is entitled to a four (4)-point role reduction. When combined with the amended mitigating role base offense level caps, his total adjusted offense level is 19.



***Under the new, broadly worded special instruction at § 2D1.1(e)(2), a person's primary function in the global drug trade is sufficient on its own to trigger the § 3B1.2 role reductions.***

Section 2D1.1(e)(2) is expansive on its face: It instructs courts to apply § 3B1.2 based upon a person's place within the generic drug trafficking hierarchy and not, as § 3B1.2 otherwise provides, based solely on comparing the defendant's conduct to others within his specific criminal scheme. The text of § 2D1.1(e)(2) is expansive in at least five ways:

- Section 2D1.1(e)(2) affirmatively establishes that a role reduction is now generally warranted for individuals whose functions are among the "low" and "lowest" drug trafficking functions and specifies functions meeting those standards. See § 2D1.1(e)(2)(B)(i)–(ii). Prior to this amendment, courts had interpreted § 3B1.2 as not permitting a reduction based solely on function. *See, e.g., United States v. McWaters*, 139 F.4th 727, 729-30 (8th Cir. 2025) ("The fact that [defendant] was a courier . . . , alone, is insufficient to show his entitlement to a reduction."); *United States v. McCombs*, 128 F.4th 911, 915–16 (7th Cir. 2025) ("[D]rug couriers are neither automatically entitled to, nor precluded from, a mitigating role reduction."). Now, function plainly suffices. *See United States v. Maciel,* 789 F. Supp. 3d 934, 939 (S.D. CA 2025) (noting that "'generally' must mean that the Sentencing Commission intended for courts to apply the adjustment for ***most*** courier defendants." (emphasis in original)).

- Section 2D1.1(e)(2) specifies that its focus is on the person's "primary" function—not necessarily the most-serious function that the person performed. *See* § 2D1.1(e)(2)(B)(i)–(ii). As discussed infra, the Commission sought input on whether to use a person's primary function or most serious conduct and opted for the former.



- Section 2D1.1(e)(2) specifically provides: "An adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout."

- Section 2D1.1(e)(2) eliminates the requirement that any other individual be involved in the instant criminal conduct and that the court consider an individual's culpability relative to others who are involved in the instant criminal conduct.

USSG § 2D1.1(e)(2)'s new text is expansive, instructing courts to apply the mitigating role reduction in far more drug-trafficking cases than § 3B1.2's generally applicable rules would permit. *See Maciel,* 789 F. Supp 3d at 939-40.

### *The Sentencing Commission intended § 3B1.2 to be applied liberally in § 2D1.1 cases.*

Section 2D1.1(e)(2)'s promulgation history underscores that role reductions are intended to be broadly available in § 2D1.1 sentencings. As to USSG § 2D1.1(e)(2), the Commission held a roundtable discussion among judges, academics, and practitioners focusing on drug trafficking sentencings;[2] released proposed amendments to the public with explanations for the proposals;[3]

---

[2] News Release, U.S. Sent'g Comm'n, U.S. Sentencing Commission Seeks Comment on New Round of Proposed Amendments (Jan. 24, 2025), https://www.ussc.gov/about/news/press-releases/january-24-2025 (indicating that proposed drug amendments "further respond to [a] roundtable[] the Commission held last year on . . . drug sentencing.").
[3] *See generally* U.S. Sent'g Comm'n, Sentencing Guidelines for United States Courts, 90 Fed. Reg. 8968, 8985–92 (proposed Feb. 4, 2025) [hereinafter Proposed Amendments].



solicited public comment on the proposals;[4] held a hearing with stakeholder witnesses;[5] and then promulgated final amendments with further explanations.[6] Throughout this process, the Commission repeatedly indicated its intent to substantially increase the rate at which people sentenced for drug offenses receive § 3B1.2 reductions, including the four-level reduction.

The Commission first proposed what became § 2D1.1(e)(2) in February 2025.[7] Initially, the Commission proposed a function-based reduction as a new "specific offense characteristic" within § 2D1.1, but it would have operated like what would become § 2D1.1(e)(2).[8] The Commission explained that its § 2D1.1 proposals were intended "to address concerns that the Drug Quantity Table . . . overly relies on drug type and quantity as a measure of offense culpability and results in sentences greater than necessary to accomplish the purposes of sentencing."[9] In so stating, the Commission explained that its proposal was grounded in "commenters hav[ing] raised concerns that the mitigating role adjustment from Chapter 3, Part B . . . is applied inconsistently in drug trafficking cases and does not adequately reflect individuals' roles in drug trafficking offenses."[10]

---

[4] *See generally* Public Comments on Proposed Amendments for Supervised Release & Drug Offenses (2025), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202503/90FR8968_public-comment_R.pdf [hereinafter Public Comment on Proposed Amendments].

[5] *See generally* U.S. Sent'g Comm'n, Transcript of Public Hearing (Mar. 12, 2025), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/2025031213/Transcript-Day1.pdf [hereinafter Hearing Transcript].

[6] U.S. Sent'g Guidelines Manual app. C (vol. IV) amend. 833 (U.S. Sent'g Comm'n 2025) (codified in U.S. Sent'g Guidelines Manual § 2D1.1(e)(2) (U.S. Sent'g Comm'n 2025)) [hereinafter Reason for Amendment].

[7] *See generally* Proposed Amendments.

[8] *Id.* 90 Fed. Reg. 8991–92.

[9] *Id.* at 8985-96.

[10] *See* Proposed Amendments, 90 Fed. Reg. at 8986.



The Commission also specifically asked whether that reduction should: 1) be foreclosed for individuals whose offenses included violence; 2) be foreclosed for individuals who possessed firearms; and 3) focus on a person's "primary" function or, instead, their "most serious" function.[11] The Commission likewise sought input regarding whether the provision should include an exhaustive list of qualifying functions or mere examples of potentially qualifying functions.[12] After receiving hundreds of pages of public comment and holding a hearing on the proposals, the Commission promulgated § 2D1.1(e)(2). While this represented a different logistical approach to the function reduction—creating the special instruction for applying § 3B1.2 instead of a new specific offense characteristic—essentially every decision that the Commission made from its proposal represented the broadest possible choice: it did not categorically exclude anyone based on offense characteristics; it based the reduction on the defendant's "***primary***" (instead of "most serious") function;[13] and it implemented an amalgamation of the checklist-versus-examples approaches, offering roles that would generally trigger the reduction but also making clear that the listed examples are not exclusive.[14]

The Commission's written explanations for the final amendment further demonstrate the expansive nature of the amendment. The Commission explained in its "Reason for Amendment" that it had "previously amended the Commentary to §3B1.2 to increase its usage" but the earlier amendment "did not result in a sustained increase in application of the mitigating role adjustment

---

[11] *See id.* at 8987 (describing various options for which Commission sought comment).

[12] *See id.* ("However, unlike Option 1, Option 2 would not list low-level trafficking functions to which the reduction would necessarily apply. Instead, Option 2 would list functions that may qualify for the reduction as examples.").

[13] *See* USSG § 2D1.1(e)(2)(B)(i)–(ii) (basing qualification on person's "primary function" and making no mention of most serious conduct).

[14] *See id.* (providing that reduction "is generally warranted" if performed a low-level function and prefacing listed examples with "such as").

8



in §2D1.1 cases."[15]   The Commission thus created § 2D1.1(e)(2) to "encourage broader use of § 3B1.2" in drug trafficking cases, by "expand[ing] the circumstances in which an adjustment under §3B1.2 is warranted in §2D1.1 cases."[16]

In both action and explanation, the Commission has made clear that post-amendment, the mitigating role reduction works differently—more specifically, much more expansively—in drug-trafficking cases.

### *A courier is entitled to a four-level "lowest-level function" reduction, where the person's primary function was transporting contraband.*

USSG § 2D1.1(e)(2) does not define "courier." Thus, this Court gives that term its ordinary meaning. *Asgrow Seed Co. v. Witnerboer,* 513 U.S. 179 (1995); *United States v. Martinez,* 156 F. 4th 1185 (11th Cir. 2025).  Dictionary definitions of the term "courier" are in full agreement: a courier is defined simply by the action of traveling and transporting contraband. *See, e.g.,* Courier, Oxford English Dictionary (a courier is "a messenger who runs; a person who travels with letters, dispatches, etc . . . ."), https://doi.org/10.1093/OED/1046928279; *id.* ("A person employed to transport contraband goods, esp. drugs."); Courier, Merriam Webster (defining courier as "a messenger: such as . . . a runner of contraband."); *see also* Drug Courier, Black's Law Dictionary (12th ed. 2024) ("Somebody who has been employed to transport illegal drugs.").

The Commission has long used the term "courier" consistent with this plain meaning. It has published studies discussing drug-trafficking functions and, whenever it has done so, it has defined couriers simply as people who "transport[] or carr[y] drugs in or on their person or with

---



the assistance of a vehicle or other equipment."[17] Indeed, in the context of this amendment, the

Commission provided a data briefing (on its originally proposed amendments) to the public that

included a pair of samples of prior sentencings broken down by the roles the sentenced people

occupied in those cases.[18] That sampling used the same definition for couriers.

The new special instruction is silent as to any limitations on the meaning of "courier" based

on quantity, value, route, frequency, or otherwise, and this silence is especially notable for several

reasons:

- First, the amendment's text expressly references quantity when it is pertinent to the analysis. Specifically, § 2D1.1(e)(2)(B)(ii), which addresses the two-level reduction, provides as a qualifying example a person whose "primary function was . . . distributing controlled substances in user-level quantities . . . ." The reference to quantity for one function example and silence as to another indicates that quantity is irrelevant where not so mentioned.

- Second, the amendment's history demonstrates that the Commission knowingly chose not to provide quantity or frequency limitations. During the notice-and-comment period, the Department of Justice urged the Commission not to promulgate a function-based reduction because "the proposal ma[de] no distinction based on quantity or frequency [and did] not distinguish between an individual who [serves as a courier] once and another who does so dozens of times, regardless of the quantities involved."[19] At the hearing on the proposed amendments the Commission heard testimony both from DOJ and Defender attorneys practicing on

---

[17] *See, e.g.,* U.S. Sent'g Comm'n, Methamphetamine Trafficking Offenses in the Federal Criminal Justice System 37 (2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf. At times the Commission instead breaks out this conduct into the separate roles of "courier" and "mule." The definition remains the same but divides the category based on whether the person used a vehicle (courier) or the person's body (mule). *See, e.g.,* U.S. Sent'g Comm'n, Mandatory Minimum Penalties for Drug Offenses in the Federal Criminal Justice System 44 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171025_Drug-Mand-Min.pdf.

[18] *See generally* U.S. Sent'g Comm'n, Proposed Amendments on Drug Offenses Public Data Briefing (2025), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/data-briefings/2025_Drug-Offenses.pdf.

[19] Public Comment on Proposed Amendments at 257–58 (letter from DOJ).



the southern border where courier quantities are often substantial.[20] There, as well, DOJ encouraged the Commission not to find that large-weight, international couriers are lowest-level functionaries.[21] The Commission chose not to take the DOJ's advice.

- Third, the silence regarding quantity and frequency is notable because § 3B1.2 itself used to expressly reference those factors in determining whether a courier received a reduction—before the Commission eliminated those factors. Specifically, prior to 2001, commentary regarding the four-level minimal role reduction both encouraged courts to use the reduction "infrequently" and provided examples of who should receive the reduction.[22] One example was that of a person who participated "in a single marihuana shipment" or as "a courier for a single smuggling transaction involving a small amount of drugs." In 2001, the Commission removed that example (and the language calling for "infrequently" granting reductions).[23] Having once included language distinguishing among couriers based on quantity and frequency, it is noteworthy for the Commission to provide new, courier-focused language with no limitations or distinctions whatsoever.[24]

- Fourth, just last year—that is, just before promulgating the relevant amendment— the Commission reported that having a large quantity of substances is entirely consistent with being a courier. In its 2024 methamphetamine report, the Commission explained that couriers in meth cases transported an average of 21 kilograms—"double the quantity . . . compared to high level suppliers . . . ."[25] And even earlier, in a 2011 report to Congress, the Commission noted that "the quantity

---

[20] See Hearing Transcript at 7 (introducing witnesses including Assistant U.S. Attorney from W.D. Texas and Assistant Federal Public Defender from S.D. Texas who previously served in W.D. Texas).

[21] See, e.g., id. at 14 (DOJ witness contending that high quantities are not entrusted to low-level individuals).

[22] See, e.g., U.S. Sent'g Guidelines Manual § 3B1.2 App. N. 2 (U.S. Sent'g Comm'n 2000) ("It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.").

[23] See U.S. Sent'g Guidelines Manual app. C (vol. II) 224–28 (U.S. Sent'g Comm'n 2025) (removing the example via Amendment 635; see also id. app. C (vol. III) 406 (striking prior language calling for minimal role to "be used infrequently" via Amendment 755).

[24] And that prior language itself demonstrated that, absent modification, the term "courier" does not carry any quantity or frequency limitations. Had it done so, the examples would not have had to specify that the courier at issue should have been infrequently involved.

[25] U.S. Sent'g Comm'n, Methamphetamine Trafficking Offenses in the Federal Criminal Justice System 39 (2024).



of drugs involved in an offense is not closely related to the offender's function in the offense."[26]

- Fifth, reading into the instruction a weight-based limitation would make little sense in light of the base offense level caps that are triggered by a person receiving a § 3B1.2 reduction. Drug trafficking base offense levels are tied exclusively to drug type and quantity. Under the same amendment, if a person who would otherwise have a base offense level between 32 and 38 receives the four-level § 3B1.2 reduction for serving a courier function, that person's base offense level is reduced to 30. If high drug quantities meant that a person could not fit the definition of a courier, there would be no need for a base offense level cap applicable to the highest offense levels for people who receive the mitigating role adjustment.

The Commission's decision not to tie application of § 2D1.1(e)(2) to drug quantity or trip frequency makes sense.[27]

### *Paragraph 14—Safety Valve*:

Mr. Lopez objects to paragraph 14 of the PSR which provides that "the defendant has not fully debriefed as required by 18 U.S.C. § 3553(f)(5) and §5C1.2(a)(5)."   Mr. Lopez qualifies for the Safety Valve reduction of the Amended First Step Act as codified in 18 USC 3553(f). Mr. Lopez has less than four criminal history points, has no prior 3-point offense, or a prior 2-point violence offense. Mr. Lopez did not use violence or threats of violence or possess a firearm in

---

[26] U.S. Sent'g Comm'n, 2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 168 (2011).

[27] At bottom, the drug trafficking industry can be analogized to any number of profit-driven, product-selling, international companies like Amazon or Walmart. As in the drug trafficking industry, those companies serve as retail and distribution networks for products that are themselves produced and transported by the (often-internationally based) manufacturer's networks. A person whose job is delivering Amazon packages (or carrying Walmart inventory) is a courier—whether on their first hour of work or their twentieth year; whether their vehicle contains millions of dollars in goods or carries a single package; and whether the person is in a probationary period, seasonal, or a long-tenured employee. And if that courier quits their job—or, to make for a closer analogy—is arrested and thereby forced to leave their job, the impact on Amazon's functioning and its bottom line will be negligible regardless of any of those factors. In the context of federal sentencing, arresting a courier has little impact on the drug-trafficking market (as with an Amazon delivery-driver, he will be quickly replaced), which is relevant to multiple purposes of sentencing. See § 3553(a)(2) (enumerating as purposes of sentencing protection of the public and deterrence).



connection with the offense. Mr. Lopez's offense did not result in death or serious bodily injury to any person and he was not an organizer, leader, manager or supervisor of others. Moreover, Mr. Lopez provided a factual proffer wherein he truthfully provided the Government with all of the information and evidence he has concerning the offense.

Neither 18 USC §3553(f)(5) nor §5C1.2(a)(5) of the Sentencing Guidelines require that defendant be "fully debriefed." Both simply provide:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Mr. Lopez's factual proffer truthfully provides the Government the information and evidence Mr. Lopez has concerning the offense. *See DE 147.* Namely, that he was on a GFV when it was interdicted by the Coast Guard, that he was not a master and he did not know who was in charge. Moreover, Mr. Lopez agreed with the Government that there were eight (8) bales of cocaine on board the vessel. Mr. Lopez has no other information regarding the offense charged.

Furthermore, in all prior instances that the undersigned has worked with this Assistant United States Attorney, the Factual Proffer has always been sufficient for a safety valve reduction. It is not clear what has changed. Nevertheless, upon receipt of the PSR, on November 14, 2025, the undersigned emailed the Assistant United States Attorney to confirm that the Factual Proffer is sufficient or to schedule a debrief in compliance with §5C1.2. As of this filing, the undersigned has not received a response from the Government.



***Paragraph 15—Base Offense Level***

Based on the foregoing, because Mr. Lopez is a minimal participant, his Base Offense Level is **30**,[28] not 36. *See* §2D1.1(a)(5)(B). Under the drug computation chart in section 2D1.1(c)(2) Mr. Lopez is at a level 36 because he was convicted of trafficking at least 150 KG but less than 450 KG of cocaine. Section 2D1.1(a)(5) provides that if the defendant receives an adjustment under §3B1.2 and the base offense level is above level 34, the base offense level is to be adjusted to level 32. *See* §2D1.1(a)(5). But if the resulting offense level is greater than 30 and the defendant receives the four (4)-level reduction in §3B1.2(a), the offense level is decreased to level 30. *See* §2D1.1(a)(5).

***Paragraph 18-Role Adjustment***

Based on the foregoing arguments on Role Adjustment, Mr. Lopez is entitled to a four (4) level reduction under new special instruction 2D1.1(d)(2)(B)(i), which provides: "An adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." Section 3B1.2(a) provides for decrease of four (4) levels if the defendant is a minimal participant in criminal activity.

---

[28] This computation is based on Mr. Lopez being a minimal participant and receiving the four (4)-level reduction in §3B1.2(a) and having a base cap of 30 pursuant to §2D1.1(a)(5). If Mr. Lopez receives a minor role reduction, his Base Offense Level is 32. *See* §2D1.1(a)(5)(B).

14



*Paragraph 20-Adjusted Offense Level*

Mr. Lopez's Adjusted Offense Level is 19, calculated as follows:

| Base Offense Level | $30^{29}$ |
|---|---|
| Adjustment for Minimal Role | -4 |
| Safety Valve section 5C1.2 | -2 |
| | |
| Adjusted Offense Level (Subtotal) : | 24 |
| Acceptance of Responsibility: | |
| Section 3E1.1(a) | -2 |
| Section 3E1.1(b) | -1 |
| Zero Point Offender Adjustment: | -2 |
| | |
| TOTAL OFFENSE LEVEL | **19**   (30-37 months) |

## B. FACTUAL OBJECTIONS/CORRECTIONS

Mr. Lopez wishes to correct the information in the following paragraphs as follows:

*Paragraph 34*:

Mr. Lopez's brothers Mauro Jose Lopez and Jonny Tomas Lopez were lost at sea during a storm.

He has a sister, Pastora Lopez (not Pastera).

His sister Juana Lopez is deceased.

His brother Eleocio did not have any children.

His brother Jonny is married.

---

[29] Mr. Lopez starts at a level 36 based on the Drug Quantity Table in section 2D1.1(c)(2).  Section 2D1.1(5) caps Mr. Lopez's base at a level 30.  If the defendant receives a 3B1.2 adjustment (the PSR already grants him a 2-level adjustment for minor role)  and the base offense under subsection (c) is greater than 34, decrease to level 32.  If the defendant receives the 4-level reduction in §3B1.2(a), the base offense is capped at 30.



His sister Felida was married prior to her passing and had children, but Mr. Lopez does not remember how many.

**_Paragraph 36_**:  Mr. Lopez's son Elencio moved to Cumana Venezuela with his mother when Mr. Lopez was arrested.

Mr. Lopez's has two grandchildren, Emily, who is eight years old (Georgely's daughter), and a grandson who was born to his son Diorge after Mr. Lopez was arrested.

**_Paragraph 38_**: Mr. Lopez is 44 years old.

**_Paragraph 50_**:  Mr. Lopez was detained by the United States Coast Guard on June 26, 2024.

## C. OBJECTIONS TO SENTENCING OPTIONS

Mr. Lopez objects to paragraphs 53, 55.

**_Paragraph 53_**: Based upon a total offense level of 19 and a criminal history category I, the guideline imprisonment range is 30-37 months.

**_Paragraph 55_**: As previously argued, Mr. Lopez is entitled to Safety Valve reduction since he has already provided a truthful statement to the Government detailing his involvement in the offense. Nothing in 18 U.S.C. § 3553(f)(5) or §5C1.2(a)(5) require a full debrief as suggested in the PSR. *See PSR at ¶ 55.*

## III.   SENTENCING MEMORANDUM

Pursuant to the offense level computations set forth herein, Defendant asserts that the correct sentencing guideline range is 30-37 months imprisonment (level 19, Criminal History I). However, Mr. Lopez has been in custody since June 2024, approximately 18 months.

Based on BOP's calculations for sentences served, Mr. Lopez would serve 85% of any sentence imposed by this Court with credit for all presentence incarceration time already served.



Therefore, if this Court imposed a 30-month sentence against Mr. Lopez he would serve 25.5 months, less 18 months already served in detention, leaving 7.5 months to be served.

Considering that Mr. Lopez has no legal statue in the United States and has an immigration detainer filed against him, upon completion of his sentence he would be transferred to ICE custody for removal.  While in ICE custody, because he has no passport, he would spend four (4) to five (5) months awaiting the proper travel documents in order to be deported and enter his country of citizenship legally.   Under this circumstance a sentence of credit for time served would be appropriate.

## SENTENCING AFTER BOOKER

In *Booker*, the Supreme Court held that the Sentencing Guidelines are no longer mandatory and constitute only one of the sentencing factors that the Court must consider under *18 U.S.C. §3553(a)*. *United States v. Booker,* 125 S.Ct. 738, 757 (2005). Under *Booker,* sentencing decisions are subject to a "reasonableness" standard of review which must be measured against the factors outlined by Congress in *§3553(a)*. *Booker,* 125 S.Ct. at 761. A sentence outside the advisory guideline range does not need to be justified by "extraordinary circumstances." *Gall v. United States,* 128 S. Ct. 586 (2007). Indeed, the Supreme Court has specifically rejected any presumption of unreasonableness for sentences outside the guideline range. *Gall,* 128 S. Ct. at 595. The Eleventh Circuit has advised that "*after it makes [its] guideline calculation, the District Court may impose a more severe or more lenient sentence as long as the sentence is reasonable.*" *See United States v. Crawford,* 407 F.3d 1174 at 1179 (11th Cir. 2005)*; see also United States v. Williams,* 456 F.3d 1353, 1363(11th Cir. 2006). The sentence imposed must be "sufficient but not greater than necessary" to achieve the four purposes of sentencing outlined in *§3553(a)(2)*. *See United States v. Adelson,* 441 F.Supp.2d 506 (SDNY 2006) (finding the mechanical application of the

QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-9363 • Fax: (305) 446-4503

advisory sentencing guidelines in a fraud case where losses totaled $260 million would produce a sentence far greater than necessary for punishment under §3553(a)).

In *United States v. Williams,* 435 F.3d 1350 (11th Cir. 2006) the Eleventh Circuit upheld the district court's 90-month sentence, which was less than half of the lowest sentence within the advisory Guidelines range of 188 to 235 months, where the district court correctly calculated the Guidelines range, weighed statutory factors, and gave specific, valid reasons for sentencing lower than this advisory range. In *Williams*, the defendant was designated a career offender due to a felony possession of cocaine with intent to sell or deliver, and a felony carrying a concealed firearm. *Id.* at1352. Furthermore, the defendant's criminal history category, prior to the career offender enhancement, was V. *Id.* After the career offender enhancement, the defendant in *Williams* was subject to a level VI criminal history category.

In departing downward from a guideline range of 188 to 235 months imprisonment, the court stated:

> I think, in light of <u>Booker</u>,…the Court is still required-and I give considerable deference and weight to the [G]uidelines because a great deal of thought and research and time has gone into developing them, and I think it's a worthy goal to try to obtain some degree of consistency throughout the country. On the other hand, there are occasions when the [G]uidelines simply produce an unjust result; and, in my view…188 months in prison for selling $350 worth of cocaine is akin to the life sentence for the guy that stole a loaf of bread in California. To me, that…does not promote respect for the law and is way out of proportion to the seriousness of the offense and to [Williams'] prior criminal conduct…The court also found a criminal history category of V sufficiently accounted for Williams' previous crimes. The court stated in this instance, 'the **[G]uidelines…do not produce a just and reasonable result.**' It found the difference between sentences within the Guidelines range with the enhancement and without the enhancement **was too disparate to ignore**. Specifically, a base offense level of 23 (26 minus 3 points for acceptance of responsibility) with a criminal history category of V resulted in a Guidelines range of 84 to 105 months' imprisonment without the enhancement, while a base offense level of 31 (34 minus 3 points for acceptance of responsibility) with a criminal history category of VI resulted in a Guidelines range of 188 to 235 months' imprisonment with the enhancement….[the court] could not "in good



conscience" sentence Williams to 188 months' imprisonment because it was unreasonable.

*Id. at 1352-53 (emphasis added).*

Here, this Court must consider Mr. Lopez's individual history, family circumstances, and overall conduct to determine an appropriate sentence. Together with other evidence as to Mr. Lopez's character and individual conduct, a sentence at the low end of the guidelines set forth herein (ie. total offense level 19 with a small downward departure/variance) is warranted, given the statutory factors set forth in *18 U.S.C. §3553(a)*. As set out below, *each* of the applicable sentencing factors set forth in *18 U.S.C. §3553(a)* amply justify such a sentence.

## A.  ANALYSIS OF 18 U.S.C. § 3553(A) FACTORS

### FACTOR 1: NATURE OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

#### *1.    Nature of the Offense*

Count 1 of the Indictment in this case charges the Defendant and seven (7) other co-defendants with a conspiracy to possess 228 kilograms of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46 United States Code § 70503(a)(1). Count 2 charges Mr. Lopez and his co-defendants with possession with intent to distribute 228 kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of Title 46 United States Code § 70503(a)(1). The summary of the facts regarding the offense are set out in the factual proffer which was provided to the Court at the change of plea hearing but are also set out in PSR paragraphs 3-11. As a result of Mr. Lopez's acceptance of responsibility and timely notification of his intention to plead guilty, the PSR properly recommends a three (3) level reduction, pursuant to *U.S.S.G. §3E1.1*.



Mr. Lopez pled guilty to Count 1 of the Indictment based on one instance where he was a crewmember aboard a GFV. Mr. Lopez lacked knowledge or understanding of the scope and structure of the enterprise. He did not participate in planning or organizing the criminal activity. He did not exercise any decision-making authority or influence the exercise of decision-making authority. Mr. Lopez was not the captain of the vessel, or responsible for navigating, maintaining the vessel, or undertaking any other specialized task related to the operation of the vessel. Additionally, Mr. Lopez did not design, build, commission, or own the subject GFV, and was solely recruited to serve as a crewmember aboard the GFV after all the preparations had been finalized by other individuals. Critically, Mr. Lopez was offered $1,000.00 for his participation.

Therefore, Mr. Lopez respectfully requests that this court consider his actual role in the offense and his prompt acceptance of responsibility as sentencing factors that weigh strongly in Defendant's favor.

## 2. *History and Characteristics of the Defendant.*

Mr. Lopez is a 44-year-old family man from Puerto Cabello, Venezuela. Mr. Lopez who grew up on Puerto Cabello a poverty-stricken neighborhood in Venezuela. Mr. Lopez never attended school and cannot read or write. He has been working as a fisherman since the age of fifteen. At the time of his arrest he was making approximately $30 bolivars (or /$0.13 USD) per month. Mr. Lopez is a father of five children and two grandchildren and has eleven siblings. Mr. Lopez's father, who is 77 years old is still alive and his mom passed approximately four months ago.

In an effort to atone for his illegal conduct herein, Mr. Lopez timely admitted to his conduct and accepted responsibility for the same. Unfortunately, Mr. Lopez made one wrong choice, in an otherwise long and law-abiding life, a choice that has resulted in his current situation and one that he is attempting to correct and atone for through his acceptance of responsibility.

20



Despite these difficult times and Mr. Lopez's current legal situation, his family and friends continue to support him. The overwhelming support that he continues to receive is further evidence that he is redeemable and will have significantly greater support than usual in his rehabilitation, which is a factor that weighs heavily in his favor. *See United States v. Jones,* 158 F.3d 492 (10th Cir. 1998) (noting that defendant's community service and degree of community support was a valid factor for Court to consider in fashioning an appropriate sentence).

## FACTOR 2: THE PURPOSES OF SENTENCING - (REHABILITATION, SPECIFIC DETERRENT, GENERAL DETERRENT, AND RETRIBUTION)

1. *<u>Rehabilitation</u>*

A low-end sentence (with a total offense level 19) is sufficient, but not greater than necessary, for Mr. Lopez's rehabilitation. In fact, as we all know, there are few rehabilitation programs within the Federal Bureau of Prisons. Mr. Lopez's timely acceptance of responsibility, and remorse for his actions attest to his beginning his rehabilitation. Rather than denying his involvement or protecting others, Mr. Lopez has instead demonstrated a desire to take responsibility for his actions and poor judgment.  These factors speak directly to his rehabilitation and weigh strongly in his favor.

2. *<u>Specific Deterence</u>*

A lengthy term of imprisonment is not necessary to protect society from Mr. Lopez, given that he poses a very low probability of recidivism. The Sentencing Commission's report, "Measuring Recidivism," demonstrated that (1) those who are married are less likely to recidivate than those who were not; (2) those who have not used illicit drugs are less likely to recidivate than those who did; (3) non-violent offenders are less likely to recidivate than violent offenders; (4) first time offenders are less likely to recidivate than repeat offenders; (5) those who are employed



are less likely to recidivate than those who are not employed; and (6) those who are sentenced to non-jail sentences are less likely to recidivate than those who receive straight jail. Furthermore, Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See USSC, "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score"*at 15 (2005).

Mr. Lopez's personal history shows that he has an exceedingly low chance of recidivism, based on the factors provided in the Sentencing Commission's studies. As set forth above, as well as in the PSR, Mr. Lopez has a supportive partner and family, has a criminal history category I, and is charged with a non-violent offense. Furthermore, because he is not a US resident or citizen he will, upon release, be transferred to ICE custody to be processed for deportation. There he will spend many additional months in custody (estimated to be 4-6 months in additional custody) until ICE receives the necessary travel documents from Mr. Lopez's country of citizenship (Dominican Republic) before he is deported. He does not have a Dominican passport. *(See, PSR paragraph 41).* For these reasons, it is extremely unlikely that Mr. Lopez will ever commit another criminal offense.

## 3. *General Deterence*

"General Deterrence" aims to deter *others* from committing crimes. While the government may correctly point out that the instant offense is a serious crime, sentencing Mr. Lopez to a lengthy prison term is not necessary for purposes of general deterrence. Mr. Lopez is not a high-profile defendant who lived a lavish lifestyle based on criminal activity whom the public is likely to see as treated leniently unless he goes to prison for a lengthy period of time. On the contrary, his forthright remorse, and acceptance of responsibility offer an example to the public of the

22



importance of timely accepting responsibility for one's wrongdoing. By rewarding Mr. Lopez appropriately for his willingness to admit his illegal conduct, pleading guilty, and accepting responsibility for his actions, the Court effectively sends a message to others who may be involved in criminal behavior that prompt acceptance of responsibility offers the opportunity to make up for prior wrongdoing. Such a message has at least as much value for general deterrence purposes as sending Mr. Lopez to prison for a lengthy period.

**4.  *Retribution Just Punishment***

While retribution is an important statutory factor under §3553(a), the overriding command of the law is for the Court to achieve a sentence that is "sufficient but not greater than necessary." *See United States v. Adelson*, 441 F.Supp. 2d 506, 515 (SDNY 2006) ("We are aware of no empirical evidence or studies indicating that a long prison sentence is necessary to achieve the retributive and general deterrence objectives applicable to a case like this one").

### FACTOR 3: THE KINDS OF SENTENCES AVAILABLE

Title 18 U.S.C. §3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in ¶ (2) of this subsection" (*emphasis added*). As Judge Rakoff pointed out in *Adelson,* the operative word in this congressional mandate*, is* "necessary." 441 F.Supp.2d at 515. Under Factor 3 in §3553(a), the Congress directs the Court to consider a wide range of alternatives to imprisonment if the availability of those alternatives would render a prison sentence "unnecessary."

### FACTORS 4-5: THE ADVISORY SENTENCING GUIDELINES AND POLICY STATEMENTS

The PSR finds Mr. Lopez's total offense at level 29, with a criminal history category of I, resulting in a sentencing range of 87-108 months. As previously shown, those calculations are



incorrect. As set forth above, Mr. Lopez should be entitled to a minimal role reduction under § 2D1.1(e)(2) and safety valve adjustment under § 5C1.2.  If the Court agrees with the defense position based on the foregoing arguments, Mr. Lopez's total offense level should be 19, resulting in a sentencing range of 30 to 37 months' imprisonment. Defendant believes that a sentence of credit for time served, without any other considerations, would be a reasonable and appropriate sentence.

<div align="center">**FACTOR 6: AVOIDING DISPARITY WITH SIMILAR OFFENDERS**</div>

Here, Mr. Lopez and his co-defendants are all scheduled for sentencing around the same time on December 17, 2025, and December 18, 2025. As no disparity of sentence presently exists, this Court should take notice of the extensive case law provided herein detailing the downward departures granted in cases involving similar offenses and/or guidelines calculations as those present herein.

<div align="center">**FACTOR 7: RESTITUTION**</div>

Mr. Lopez's relevant conduct herein and offense of conviction do not carry a restitution obligation. Therefore, this sentencing factor is inapplicable as it relates to this Court's sentencing determination.

**IV.    REQUEST FOR DOWNWARD DEPARTURE/VARIANCE**

Mr. Lopez asserts that there are factors that warrant a departure and/or variance and requests that the Court grant him a downward departure/ variance under 18 USC § 3553 for the following reasons:

First, for the additional incarceration time he will spend in ICE custody awaiting deportation to Venezuela. After completion of his sentence, the Defendant will be transferred to INS custody to be processed for removal from the United States. The Defendant has no travel

<div align="center">24</div>



documents and must await, while in INS custody awaiting deportation, for the Government to obtain travel documents from Venezuela so he may be deported/removed and allowed to enter that country legally. It is estimated that the average additional time of incarceration while awaiting travel documents from a foreign country is 4-6 months on average.

As a second reason, Mr. Lopez asks the Court to consider that he was detained by the United States Coast Guard on June 26, 2024, and was then transferred to DEA custody on July 5, 2024. Section 14 U.S.C. §522(a) grants the Coast Guard authority to board any vessel subject to the United States jurisdiction to *arrest* any individual violating the laws of the United States. Mr. Lopez was arrested on June 26, 2024, by the Coast Guard and has remained in the custody of the United States since. Accordingly, Mr. Lopez asks that the Court grant him credit for the entire time he has been in custody, i.e., June 26, 2024.

As a third basis the defense requests that the Court take Judicial Notice of the United States Sentencing Commission's Statistical Information Packet for Fiscal Year 2024, Southern District of Florida, Table 10. Attached hereto as Exhibit A. Pursuant to the sentencing data from the Sentencing Commission for the Southern District of Florida for the fiscal year 2024, district court judges granted variances in 56.2% of drug trafficking cases. Nationally, in 2024, district court judges granted variances in 41.5% of drug trafficking cases. The percentage of upward departures in the entire Southern District of Florida in 2024 was zero. Nationally the percentage of upward departures in drug trafficking cases in 2024 was 0.4%. *See Id*. Should the Court overrule Mr. Lopez's objections as set out herein, it would, in effect, be granting an upward departure sentence by default.

Mr. Lopez asserts that the above reasons taken individually or collectively provide sufficient reasons for a downward variance.



## V.   <u>CONCLUSION</u>

**WHEREFORE**, for the reasons detailed herein, the Defendant, JORGE LUIS LOPEZ-ASTUDILLO, respectfully prays that this Honorable Court adopt the above stated objections to the Presentence Investigation Report, and find that the guidelines range applicable herein is a level 19, criminal history category I, resulting in a range of 30 to 37 months, and sentence the Defendant to credit for time served by granting him a variance for the reasons set out herein, as well as any other relief the Court deems appropriate under the circumstances.

Mr. Lopez and Counsel thank this Court for considering his objections to the Presentence Investigation Report (PSR), and Sentencing Memorandum. Counsel will have further remarks at the time of sentencing.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was electronically filed via *CM/ECF* this 26th  day of November 2025, and a courtesy copy of the foregoing furnished via email to all counsel of record.

<div style="margin-left:45%">

**QUINTERO BROCHE &**
**FONSECA-NADER, P.A.**
*Attorney for Jorge Luis Lopez-Astudillo*

BY: /s/ Frank Quintero, Jr.
    FRANK QUINTERO, JR.
    Florida Bar No.: 399167
    75 Valencia Ave., Suite 800
    Coral Gables, Florida 33134
    Tel.: 305-446-0303/Fax: 305-446-4503
    E-mail: fquintero@quinterolaw.net
        eservice@quinterolaw.net

</div>

